D. Maimon Kirschenbaum
Leah Seliger
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, New York 10004
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**YVONNE WASHINGTON,**

        **Plaintiff,**

        v.

**NYSARC, INC. d/b/a AHRC NEW YORK CITY,**

        **Defendant.**
------------------------------------------------------------x

**Case No.:**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Yvonne Washington alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"). This Court has supplemental jurisdiction over the New York law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District because Defendant AHRC New York City conducts business in New York, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

1

**PARTIES**

3.  Defendant AHRC New York City ("AHRC" or "Defendant") is a not-for-profit organization incorporated in New York and with a primary place of business at 83 Maiden Lane, New York, New York. AHRC provides placement and support services for adults with developmental disabilities.

4.  Plaintiff Yvonne Washington ("Plaintiff" or "Plaintiff Washington") is a resident of New York and was employed by AHRC from in or around 2017 until her unlawful termination on February 19, 2021.

**FACTS**

5.  Plaintiff Washington received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") on August 10, 2021. Plaintiff's right to sue notice is attached hereto as Exhibit A.

6.  Plaintiff Washington began working for AHRC in 2017 as a Community Support Professional ("CSP") providing direct services to AHRC's clients. In or about, August of 2019, AHRC promoted Plaintiff to Records Coordinator. In April of 2020, AHRC promoted Plaintiff Washington again to the acting Community Support Supervisor ("CSS"), and in August of 2020, she became the permanent Community Support Supervisor.

7.  In her role as the Community Support Supervisor ("CSS"), Plaintiff managed a staff of approximately ten community support professionals ("CSPs") who provided direct services to AHRC's adults with developmental disabilities and their families. In her role as CSS, Plaintiff also conducted life plan meetings and client intakes, reviewed CSP progress notes, and addressed client family or CSP concerns when they arose.

8. In or about July of 2019, when Plaintiff Washington was still the Records Coordinator, Plaintiff Washington attended a social event with her supervisor at the time and other employees from AHRC. While sitting with her supervisor, she received several profane text messages from an AHRC employee named Edgar Suarez, including one message that read "Do you want to fuck me?"

9. Plaintiff Washington became visibly upset in front of her supervisor. When her supervisor inquired, Plaintiff told her that she was receiving profane texts from Mr. Suarez that were very disturbing. Plaintiff's supervisor at the time reported the incident to her supervisor, Marina Daurman.

10. Ms. Daurman followed up with Plaintiff about the incident several days later. She explained to Plaintiff that because the incident occurred outside of work, there was not much that could be done about it. Ms. Daurman then asked Plaintiff if she felt sexually harassed.

11. Mr. Suarez was not reprimanded for sending the profane text messages to Plaintiff.

12. When Plaintiff Washington became a CSS in April of 2020, Mr. Suarez was one of the CSPs that she supervised.

13. On January 28, 2021, Mr. Suarez and another female employee who reports to Plaintiff came to Plaintiff's house to get assistance with work-related tasks. Plaintiff had requested and received permission from Ms. Daurman to allow the employees to come to her house for the assistance. Because of the pandemic, it was not the first time Plaintiff assisted her direct reports outside of the office. However, Plaintiff always requested permission from her supervisor before allowing employees to work at her home.

14. When the group finished their work at Plaintiff's home, Mr. Suarez went into Plaintiff's restroom. When he came out, he appeared to have changed his demeanor significantly.

He asked Plaintiff if she "wanted to have his baby." Plaintiff became concerned and told Mr. Suarez that he needed to leave her home or she would call the police.

15. Clearly disturbed by Mr. Suarez's behavior, the female coworker left Plaintiff's house. However, Plaintiff called the female colleague immediately after she left and kept her on speaker phone so she could hear what transpired and call for help if necessary.

16. Mr. Suarez then told Plaintiff, "Yvonne, go get a condom." Mr. Suarez was behaving erratically and when Plaintiff told him to leave again, he requested a blanket so he could lay down on her couch.

17. Plaintiff said she was going to call Mr. Suarez a taxi to go home, but Mr. Suarez responded, "If you aren't sucking my dick or fucking me, I don't trust you."

18. Plaintiff was able to convince Mr. Suarez to leave her home, but before he left he threatened to tell Ms. Daurman that Plaintiff had mistreated him.

19. Plaintiff hesitated to report the incident for fear of retaliation and because in the past, AHRC had told her that they would not address sexual harassment that occurred outside the office. However, when Mr. Suarez appeared on a zoom call with her the following day, she felt extremely uncomfortable and felt compelled to inform her employer about what occurred. Because it was the second time that Mr. Suarez had sexually harassed Plaintiff, she was concerned that if she did not report it, he may do the same or worse to another employee.

20. On Monday February 1, 2021, Plaintiff reported the disturbing incident with Mr. Suarez to her supervisor, Ms. Daurman. Plaintiff also reminded Ms. Daurman about the previous incident with Mr. Suarez when Plaintiff received profane text messages from him. Plaintiff also told her supervisor that since the incident, she had felt very uncomfortable during the recent zoom meetings she had with Mr. Suarez.

21. Mr. Suarez was suspended soon after Plaintiff reported the incident.

22. On February 2, 2021, Steven Williams, AHRC's Equity, Diversity and Inclusion Officer, called Plaintiff to inquire about the incident with Mr. Suarez. Mr. Williams said he was very sorry that Plaintiff experienced this frightening event and acknowledged that she was lucky that she was able to get Mr. Suarez out of her home before something worse happened. During the conversation with Mr. Williams, Plaintiff also informed him that this was not the first sexually inappropriate incident with Mr. Suarez. Mr. Williams asked Plaintiff to submit a written statement and assured her that he would not recommend that she be fired or demoted.

23. On February 4, 2021, Ms. Daurman and her supervisor, David Summers, called Plaintiff Washington and informed her that AHRC was suspending her with pay "in the interest of fairness" while Defendant AHRC conducted an investigation into her sexual harassment complaint. Ms. Daurman told Plaintiff to set an out of office message for work communications, but did not provide Plaintiff with an end date.

24. On February 9, 2021, Ms. Daurman instructed Plaintiff to complete all of her outstanding paperwork even though she was on a forced leave of absence. Plaintiff completed all the paperwork that day.

25. On February 12, 2021, Ms. Daurman asked Plaintiff to complete additional paperwork that was not due until mid-March. Clearly, AHRC had already determined to terminate Plaintiff in retaliation for her complaint of sexual harassment. Nevertheless, Plaintiff completed the additional paperwork that day.

26. On February 19, 2021, Mr. Summers and Mr. Williams conducted a virtual meeting with Plaintiff via Zoom. Mr. Williams did all the talking but made no mention of the investigation into Plaintiff's sexual harassment complaint. Instead, Mr. Williams told Plaintiff that AHRC had

discussed other options but had decided to terminate Plaintiff for exercising poor judgment in allowing her coworkers to come to her house.

27.     Prior to Plaintiff reporting Mr. Suarez's sexual harassment, she had always received very positive performance reviews and extensive praise. AHRC promoted Plaintiff to increasingly higher levels of responsibility based on her good performance and ability to exercise good judgement. In response to Plaintiff's high level of care, one of AHRC's client families even made a donation to the organization in her honor.

28.     In the past, when Plaintiff chose not to officially report Mr. Suarez's sexual harassment, AHRC did not address the harassment, and did not retaliate. Clearly, had she chosen not to report Mr. Suarez's sexual harassment in 2021, she would still have her job.

## FIRST CLAIM FOR RELIEF
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. – Retaliation

29.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

30.     In violation of Title VII, Defendant AHRC retaliated against Plaintiff for opposing and complaining about gender discrimination and sexual harassment.

31.     Defendant AHRC's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

32.     As a result of Defendant AHRC's unlawful conduct, Plaintiff is entitled to recover compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### New York State Human Rights Law ("NYSHRL"),
### N.Y. Exec. L. §§ 290 et seq. – Retaliation

33. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

34. In violation of the NYSHRL, Defendant retaliated against Plaintiff for her complaint of sexual harassment.

35. Defendant's retaliation was sufficiently severe so as to affect the terms of Plaintiff's employment.

36. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

37. As a direct and proximate consequence of Defendant's retaliation against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

38. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to: damages for lost wages, emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### New York City Human Rights Law ("NYCHRL") – Retaliation

39. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

40. In violation of NYCHRL, Defendant retaliated against Plaintiff for complaining about sexual harassment.

41. As a direct and proximate consequence of Defendant's retaliation against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

42. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, as well as front pay, liquidated damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(A) For compensatory, liquidated and punitive damages in an amount to be determined by the trier of fact;

(B) For reasonable attorneys' fees, interest, and costs of suit;

(C) For such other and further relief as the Court may deem just and equitable.

Dated: New York, New York  
August 26, 2021

Respectfully submitted,  
JOSEPH & KIRSCHENBAUM LLP

By: */s/ D. Maimon Kirschenbaum*  
D. Maimon Kirschenbaum  
Leah Seliger  
32 Broadway, Suite 601  
New York, NY 10004  
Tel: (212) 688-5640  
Fax: (212) 688-2548

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

# EXHIBIT A

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Yvonne Washington | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2021-03776 | Madeline McGrath, Investigator | (929) 506-5291 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

FOR Judy A. Keenan, District Director

8-10-2021 (Date Issued)

cc:
Gail Kerner
**Director of Human Resources**
**AHRC NEW YORK**
83 Maiden Lane
New York, NY 10038

D. Maimon Kirschenbaum, Esq.
**JOSEPH & KIRSCHENBAUM LLP**
32 Broadway,
Suite 601,
New York, NY 10004

Enclosure with EEOC
Form 161-B (11/2020)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

Enclosures(s)

cc: **Stefanie Munsky Toren**
**CLIFTON BUDD & DEMARIA, LLP**
**The Empire State Building**
**350 Fifth Avenue, 61st Floor**
**New York, NY 10118**